Adrian Emile LAMBERT, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 17143.

United States Court of Appeals
Fifth Circuit.

Nov. 7, 1958.

R. Macey Taylor, Birmingham, Ala.,
for appellant.

W. L. Longshore, U. S. Atty., Bir-
mingham, Ala., William G. West, Jr.,
Asst. U. S. Atty., Birmingham, Ala., for
appellee.

Before RIVES, BROWN and
WISDOM, Circuit Judges.

RIVES, Circuit Judge.

The indictment charged that the defendant, appellant here, transported a stolen motor vehicle from New Orleans, Louisiana, to Birmingham, Alabama, well knowing that it had been stolen in violation of the Dyer Act, 18 U.S.C.A. § 2312.[1]

The motor vehicle was a 1955 Ford automobile owned by George E. Wood, Jr., and his wife, Josephine Wood. On the morning of March 13, 1957, Mr. Wood had its custody and left it at about 8:30 A.M. in a parking lot about one block from his place of work in New Orleans. He got off from work at 5:30 P.M. and called for the car about a half hour later, when he found it missing. Mr. Wood had given no one permission to take it from the parking lot. The automobile was returned to him by his insurance company a week or ten days later.

There was testimony that on March 14, 1957, the day after the car was missed, one John Hugh Donald drove a 1955 Ford automobile bearing a Louisiana license tag into a filling station in Birmingham, Alabama, and, after having the tank filled with gasoline, drove off without paying. The filling station operator identified the appellant as Donald's companion on that occasion. Donald was arrested about 7:00 P.M. of that same day, and the missing automobile, identified by its motor number, was recovered from him.

Two days later, on Saturday, March 16, 1957, between 4:00 and 4:50 P.M., the appellant was arrested by police officers of the City of Birmingham and was lodged in the city jail on charges of vagrancy and "failing and refusing to pay a licensed house." The jail slip showed also that he was to be held for warrant on the Dyer Act. He remained in the city jail from the time of his arrest, Saturday afternoon, until Monday morning when he was questioned for about an hour by two city detectives and an F. B. I. agent. Before questioning him, the F. B. I. agent informed him of his legal rights.[2]

At the time of that interview, the appellant had not been taken before a committing magistrate. After the interview, a complaint charging the appellant with violating the Dyer Act was filed before the United States Commissioner at Birmingham. The appellant was arrested on a warrant issued by the Commissioner, promptly carried before the Commissioner, and given a preliminary hearing all on the same day.

One of the city detectives had found in the appellant's suitcase a telegram dated March 1, 1957, sent from Richmond, California, and addressed to "ADRIAN LAMBERT—1372 CAMP ST NRLNS." In the interview, according to Detective Richmond, appellant first said that the telegram was not his, but later admitted that it was and that he had been in New Orleans. That was the extent of his admissions until John Hugh Donald was brought before him. Donald told him that he had confessed and that, "You just as well go ahead and tell the truth about it." According to Detective Richmond, appellant then "explained how he met John Hugh Donald in California about six months prior to this," and made the following admissions:

> "He admitted that he,—or he said that he waited on the corner in New Orleans at a parking lot while John Donald got this 1955, two-tone blue Ford, two-door, off the parking lot, and they—he picked him up on the corner, and they got

1. "§ 2312. *Transportation of stolen vehicles*

"Whoever transports in interstate or foreign commerce a motor vehicle or aircraft, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

2. "A. He told him, Agent Sam Bush told him that he need not make any statement at all if he didn't want to, that he had a right to have an attorney if he wanted an attorney, that he could call an attorney."

in the car and drove directly to Birmingham.

"And he also admitted being at the filling station with John Donald when they bought the gasoline and drove off without paying for it.

"Mr. Tucker:

"We object to that.

"The Court:

"Of course, gentlemen, he is not being tried for that offense. You won't regard that with respect to his innocence or guilt here. It is merely part of the whole picture in the case with respect to his identity and the identity of the car involved. Other than that, you will not consider it.

"Q. He stated he was in New Orleans and waited on the corner while John Hugh Donald stole a car and picked him up on the corner, and they came to Birmingham? A. Yes, sir."

The district court overruled the appellant's motion to suppress the foregoing admissions.

Detective Richmond was the only witness who testified to appellant's admissions. Before taking the stand he had looked over the F. B. I. report on the case.[3] When that was disclosed, appellant's counsel demanded the right to inspect the F. B. I. report before proceeding further with the examination of the witness. The court sustained the Government's objection to the production of the F. B. I. report.

The case was submitted to the jury solely on the Government's evidence.

The jury found the defendant guilty as charged in the indictment. Upon that verdict the court adjudged him guilty and sentenced him to imprisonment for two years.

The appellant insists that the court erred (1) in denying his motion to suppress his oral admissions, (2) in denying his motion for judgment of acquittal, (3) in denying his request for examination of the F. B. I. report, (4) in refusing to give to the jury certain written charges requested by the appellant.

■ (1) At the time of his oral admissions, the appellant was legally in the custody of the city police and was not charged with a federal offense. Clearly, his admissions were not "use by the Government of wrongdoing by its officers."[4] The district court properly denied appellant's motion to suppress.

■■ (2) On a motion for judgment of acquittal the test is whether, taking the view most favorable to the Government, a reasonably-minded jury might accept the relevant evidence as adequate to support a conclusion of the defendant's guilt beyond a reasonable doubt.[5]

" 'Stolen' as used in 18 U.S.C. § 2312, includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." United States v. Turley, 1957, 352 U.S. 407, 417, 77 S.Ct. 397, 402, 1 L.Ed.2d 430.

■ The evidence was adequate to prove that the automobile had been felo-

---

**3.** "The Court: Did you read the full report or just a portion of Mr. Bush's—

"The Witness: No, sir, I didn't read the full report, or I didn't necessarily refresh my recollection from it. I glanced through it, as I always do. I couldn't say everything that I read and everything that I didn't. I recall there being about ten or twelve pages long, and I glanced through it.

"The Court: Do you have any independent recollection of the facts without having to refer to that report?

"The Witness: Oh, certainly, I was there. I remember what was said."

**4.** United States v. Carignan, 1951, 342 U.S. 36, 43, 72 S.Ct. 97, 96 L.Ed. 48; see also, Brown v. United States, 5 Cir., 1956, 228 F.2d 286, 289.

**5.** Glasser v. United States, 1942, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680; Mortensen v. United States, 1944, 322 U.S. 369, 374, 64 S.Ct. 1037, 88 L.Ed. 1331; Vick v. United States, 5 Cir., 1954, 216 F.2d 228, 232; Lloyd v. United States, 5 Cir., 1955, 226 F.2d 9, 13.

niously taken from the parking lot in New Orleans and transported to Birmingham. The appellant, by his admission, waited at the corner of the parking lot while Donald stole the automobile. Further, according both to appellant's admission and also to the testimony of the filling station operator, appellant was in the car the next day at the filling station in Birmingham. The jury could reasonably infer that Donald and the appellant were jointly in possession of the stolen automobile, or that the appellant aided and abetted in its transportation. The court properly denied the defendant's motion for judgment of acquittal.

█ (3) In Jencks v. United States, 1957, 353 U.S. 657, 666, 667, 77 S.Ct. 1007, 1012, 1 L.Ed.2d 1103, the Supreme Court, referring to Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447, said:

> "* * * The necessary essentials of a foundation, emphasized in that opinion, and present here, are that '[t]he demand was for production of * * * *specific documents and did not propose any broad or blind fishing expedition* among documents possessed by the Government on the chance that something impeaching might turn up. Nor was this a demand for statements taken from persons or informants not offered as witnesses.' (Emphasis added.) 344 U.S. at p. 419. We reaffirm and re-emphasize these essentials."

The statute passed to meet the Jencks decision, 18 U.S.C.A. § 3500, confines the right to inspect statements or reports in the possession of the United States to those which were made by a Government witness. In the present case, appellant's counsel sought to examine the full F.B.I. report made by Agent Bush, and not joined in by the witness, City Detective Richmond.

In Goldman v. United States, 1942, 316 U.S. 129, 132, 62 S.Ct. 993, 995, 86 L.Ed. 1322, the Court stated:

> "* * * the better rule that where a witness does not use his notes or memoranda in court, a party has no absolute right to have them produced and to inspect them. Where, as here, they are not only the witness' notes but are also part of the Government's files, a large discretion must be allowed the trial judge."

The Goldman case was not overruled in Jencks (see 353 U.S. at pages 668, 674, 680, 77 S.Ct. at pages 1013, 1016, 1019). We are unwilling to hold that the discretion of the district court was abused in this case.

█ (4) The defendant's requested charges, so far as they stated correct propositions of law, were adequately covered in the court's oral charge to which defendant's counsel announced that there were no exceptions. See Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.

We find no reversible error in the record, and the judgment is

Affirmed.